R. L. TAYLOR v. J. A. JONES CONSTRUCTION COMPANY,
J. W. MARKHAM ET AL.

(Filed 18 May, 1927.)

1. **Damages — Negligence — Permanent Injury — Evidence — Mortuary Tables—Expectancy of Life—Net Amount—Appeal and Error.**

   The amount of plaintiff's recovery from a negligent personal injury inflicted on him by the defendant should be confined upon supporting evidence to the present net worth of the sum of money to be ascertained by the jury for the time fixed by the mortuary table enacted into our statute, considered with the evidence as to the health of the plaintiff at the time, the mortuary tables to be considered by the jury as only evidentiary in connection with other relevant evidence, and an instruction otherwise upon these two elements of damages for their consideration is reversible error.

2. **Master and Servant—Fellow-Servant—Negligence in Selecting Servants —Evidence—Wages Paid—Appeal and Error.**

   Where the plaintiff, among other things, seeks to recover damages for a personal injury on the ground of the defendant's negligence in not selecting other competent or careful employees which caused the injury in suit, evidence as to the comparative insufficiency of compensation he paid them in comparison with that paid for competent employees, is inadmissible.

3. **Master and Servant—Negligence of Fellow-Servant—Notice Actual or Constructive—Evidence.**

   For a master to be held responsible in damages for his negligence in employing incompetent fellow-servants which caused the damages in an action for a personal injury to the plaintiff, an employee engaged within the scope of his employment, the conduct of the fellow-servants or specific negligent acts while engaged in their work is insufficient unless the defendant had actual or constructive notice thereof before the injury occurred, in the absence of other evidence of the master's negligence in employing them.

CIVIL ACTION, before *R. Lee Wright, Emergency Judge,* at Spring Term, 1927, of MECKLENBURG.

On 21 September, 1925, the plaintiff, a carpenter, was working for the defendant J. A. Jones Construction Company, and had been in its employ seven or eight years. Prior to 21 September, Mrs. Sallie D. Wilder, the owner of a lot in Charlotte, entered into a contract with defendant J. A. Jones Construction Company to construct a ten-story office building, with the exception of the steel frame. The contract for furnishing the steel and the erection thereof was awarded by the owner to the defendant A. J. Dietrich, and thereafter Dietrich made a contract with the defendant J. W. Markham, a contractor for steel erection, by the terms of which the said J. W. Markham should perform the work of constructing and erecting into the steel frame of the building the steel

furnished by the defendant Dietrich. The steel work consisted of raising and placing long heavy steel beams in the various stories of said building.

The elements of negligence alleged by the plaintiff were:

1. That the defendant Markham, in erecting the steel, "negligently failed to provide or construct, or cause to be provided or constructed, . . . any proper temporary floor or deck which could or would have caught falling beams."

2. That the defendant Markham and his employees . . . raised said beam, negligently using a single sling or loop, which was insufficient to properly support and balance said beam and prevent it from slipping and falling from said sling or loop.

3. That said Markham and "his employees, in raising said beam, negligently failed to use a proper tag, guide, or guy line attached to said beam for the purpose of steadying and preventing said beam from slipping out of said sling or loop."

4. That while one of said beams was being hoisted the defendant Markham "and his employees negligently failed to balance said beam properly, negligently allowed it to wabble and strike against a column or lug of the building and negligently allowed said beam to become unbalanced, slip from said loop or sling, fall upon, and cause another beam to fall upon plaintiff, causing him great and permanent injuries."

5. That the defendant Markham "negligently employed, with knowledge of his incompetence, a careless and incompetent workman, who had charge of the work of raising and hoisting said beam which injured plaintiff."

The elements of negligence asserted against the defendant Jones Construction Company were "that the defendant J. A. Jones Construction Company negligently failed to construct or provide, or cause to be constructed or provided, beneath the point or points to which the said steel beam was being hoisted, and where it was being set, and above the floor where plaintiff was working, any proper temporary floor or deck, suitable to catch falling beams."

The testimony of plaintiff tended to show that on the day of his injury he was building, or assisting in building, a form or casing, and the steel beams referred to were being raised, hoisted and set above his head, and that there was no protective floor or decking above him to safeguard the falling beams; that at the time of his injury the defendant Markham was using a single grass rope sling, with a loop in the center and a hook for the purpose of raising the beams and setting them in place. There was further evidence tending to show that the employees of the defendant Jones Construction Company had been warned that steel workers were working above them, and that there was no flooring

there, and to stay out from under them. There was further testimony tending to show that the superintendent of the construction work for the defendant J. A. Jones Company had complained about the absence of a protective flooring or decking, and that the architect had instructed the defendant Markham to install this flooring or decking for the protection of laborers who were working under the employees of the defendant Markham while they were engaged in erecting the steel. There was further evidence that other objects had fallen from upper floors from time to time, such as rivets and bolts. There was further evidence to the effect that the falling beam inflicted serious and permanent injuries upon the plaintiff.

The issues and answers of the jury thereto were as follows:

1. Was the plaintiff injured by reason of the negligence of the defendant J. W. Markham, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff injured by reason of the negligence of the defendant J. A. Jones Construction Company, as alleged in the complaint? Answer: Yes.

3. Did the plaintiff contribute to his own injury, as alleged in the answer? Answer: No.

4. What amount, if any, is plaintiff entitled to recover against the defendants, or either of them. Answer: $22,875.

5. Was the negligence of the defendant J. W. Markham primary, and that of the J. A. Jones Construction Company secondary? Answer: Yes.

6. Was the negligence of the defendant J. A. Jones Construction Company primary and that of J. W. Markham secondary? Answer: No.

Judgment was entered upon the verdict, and both defendants appealed.

*Brenizer & Scholl for plaintiff.*
*J. Laurence Jones for Jones Construction Company.*
*James A. Lockhart for J. W. Markham.*

BROGDEN, J. On the issue of damages, the court charged the jury as follows: "The plaintiff, if entitled to recover, is entitled to have a reasonable compensation, if he is entitled to recover at all, he is entitled to recover for the loss of both bodily and mental powers, and for actual suffering, both of body and mind, which are the immediate and necessary consequences of the injury. And it is for you, gentlemen of the jury, to say, under all the circumstances, how much—what is a reasonable and fair sum which the defendants should pay the plaintiff by way of compensation for the injuries he has sustained. The age of the plaintiff, his occupation, the nature and extent of his ability to work now, as compared with his ability to work before the injury, his earning capacity at the time of the injury, as compared with his earning capacity

at this time, or his earning capacity for the future, are all matters for your consideration, and it is for you to say what amount, if any, the plaintiff is entitled to recover. Now, the court charges you that the evidence is that the plaintiff was about 40 years of age at the time of his injury, and according to the mortuary table, as laid down by the law, he is supposed to live 28 years longer, under the law—not that he will live that long, because he might not live but a very short time, still, he may live longer than 28 years longer, but the law fixes the limit that he is supposed to live in law as 28 years from the time of his injury, and that is given for the purpose to enable juries to estimate the damages that a person is entitled to recover for the negligence of another person. Now, you have the right to take into consideration, in passing on the question of damages, his health before and his health now, whether he is permanently injured, or whether he was just temporarily injured. The court charges you that if you find that the plaintiff was permanently injured, then he is entitled to recover more damages than if he had only been temporarily injured, or if he were only suffering from a superficial wound. If you find from the greater weight of the evidence that the plaintiff is permanently injured, then you would have the right to take into consideration the suffering he has sustained, his doctor bills, his earning capacity, and his ability to perform labor in the future, because, if he is entitled to recover at all, he is entitled to recover for that period of time that he is disabled to work, or that his earning capacity has been decreased. Now, these are matters for you, and it is for you to say whether he is entitled to recover the sum of $50,000, or a smaller sum. You don't have to give him $50,000 unless you want to. You may give a smaller amount, and that is matter entirely in your hands to say how much."

Both defendants excepted to the foregoing charge.

There are two fatal defects in this instruction:

1. The charge is defective because it fails to limit the damage which may accrue in the future by virtue of permanent injury to the present cash value or present worth thereof.

The whole subject has been critically examined and the authorities assembled by *Stacy, C. J.,* in *Shipp v. Stage Lines,* 192 N. C., 475, and we deem it unnecessary to multiply authorities. Quoting from *Murphy v. Lumber Co.,* 186 N. C., 746, the *Chief Justice* said: "Defendant's position in regard to limiting the damages, if any, which may accrue in the future to the present cash value or present worth of such damages is undoubtedly the correct one, for if the jury assess any prospective damages, the plaintiff is to be paid now, in advance, for future losses. The sum fixed by the jury should be such as fairly compensates the plaintiff for injuries suffered in the past and those likely to occur in the future.

The verdict should be rendered on the basis of a cash settlement of the plaintiff's injuries, past, present, and prospective."

2. The charge also contains this language: "But the law fixes the limit that he is supposed to live in law as 28 years from the time of his injury, and that is given for the purpose to enable juries to estimate the damages that a person is entitled to recover for the negligence of another person."

It is true that the learned trial judge told the jury that the plaintiff might or might not live 28 years, but immediately following that instruction he gave the positive charge above set out. As we construe it, the effect of this positive declaration was to instruct the jury that they were to consider plaintiff's expectancy as 28 years, for the purpose of estimating damages flowing from the injury alleged. In the language of *Hoke, J.,* in *Sledge v. Lumber Co.,* 140 N. C., 459: "The error here consists in making the mortuary tables conclusive as to the plaintiff's expectancy; whereas, by the very language of the statute, they are only evidential to be considered with all other testimony relevant to the issue." *Speight v. R. R.,* 161 N. C., 80; *Odom v. Lumber Co.,* 173 N. C., 134.

The defendant Markham excepted to the following testimony: "(Q.) Don't you know furthermore that Mr. Markham paid very low scale wages?" "(A.) He was paying the regular scale. He was paying one dollar an hour." The record states that this evidence was only admitted to show that incompetent men were employed by Markham. "(Q.) Don't you know that D. L. Sloan was working on that job opposite Kale at fifty cents an hour, and that he was comparatively a green hand?" "(A.) Luke had had two years experience." The evident purpose of this testimony was to establish the negligence of Markham in failing to employ competent workmen, but we fail to see how the compensation paid a workman, or that he was being paid according to the regular scale, or any other scale, is any evidence of reputation for carelessness in performing his work. In *Walters v. Lumber Co.,* 163 N. C., 536, this Court quotes with approval the following rule as to establishing the incompetency of an employee: "The presumption is that the master has exercised proper care in the selection of the servant. It is incumbent upon the party charging negligence in this respect to show it by proper evidence. This may be done by showing specific acts of incompetency, and bringing them home to the knowledge of the master or company; or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. But such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of. So it is proper, when repeated acts of incompetency of a

certain character are shown on the part of the servant, to leave it to the jury to determine whether they did come to the knowledge of the master, or would have come to his knowledge if he had exercised ordinary care." *Walters v. Lumber Co.,* 165 N. C., 388; *Michaux v. Lassiter,* 188 N. C., 132.

There are other grave exceptions in the record, meriting close examination and scrutiny, but, as we are compelled to send the case back for a new trial for the error specified, we deem it unnecessary to discuss the other exceptions for two reasons: first, because they may not occur in a subsequent trial; second, in discussing a case of this importance, where a new trial must be awarded, it is practically impossible to prevent employing language in the opinion which may result in advantage to one or the other of the litigants. Suffice it to say that our decision is confined solely and exclusively to the points discussed in this opinion.

New trial.