IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-39

No. 486PA19

Filed 16 April 2021

STATE OF NORTH CAROLINA

v.

JAMELL CHA MELVIN and JAVEAL AARON BAKER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, No. COA18-843, 2019 WL 6134204 (N.C. Ct. App. 2019), finding no error in part and vacating and remanding in part judgments entered on 4 August 2017 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Supreme Court on 15 February 2021.

*Joshua H. Stein, Attorney General, by Benjamin O. Zellinger, Special Deputy Attorney General, for the State-appellee.*

*Sarah Holladay for defendant-appellant Jamell Cha Melvin.*

EARLS, Justice.

In the summer of 2015, armed robbers stole nearly half a million dollars from Raleigh's Walnut Creek Amphitheater. The narrow question in this appeal is whether one of the defendants in this case, Jamell Cha Melvin, properly preserved for appellate review his claim that he should not have been tried jointly with another defendant because the two had antagonistic defenses at trial. Three defendants, Mr. Melvin, Javeal Aaron Baker, and Kianna Baker, were tried together as co-defendants

for their involvement in the crime after their motions for separate trials were denied. Following their convictions, Mr. Melvin and Mr. Javeal Baker appealed to the Court of Appeals, arguing that the trial court should have granted their motions for severance. The Court of Appeals concluded that their claims had not been properly preserved for appeal because the grounds for severance argued at the beginning of the trial were not the same as the grounds relied upon by defendants on appeal. However, the Court of Appeals erroneously analyzed the case as one involving severance of offenses rather than severance of defendants. Mr. Melvin sought and was allowed discretionary review by this Court. We reverse and remand to the Court of Appeals for consideration on the merits of Mr. Melvin's claim for severance of defendants.[1]

## I. Background

¶ 2        At trial, the State presented evidence that three armed men entered the

---

[1] The Court of Appeals also considered arguments from Mr. Baker and Mr. Melvin that (1) the trial court erred when, in response to a jury request for available information on Crime Stopper tips, the trial court failed to repeat a limiting instruction regarding anonymous tips; and (2) the trial committed plain error by instructing the jury that it could find Mr. Baker and Mr. Melvin guilty on six separate counts of robbery. *State v. Melvin*, No. COA18-843, 2019 WL 6134204, at *5–7 (N.C. Ct. App. Nov. 19, 2019) (unpublished). It rejected these arguments. *Id.* The Court of Appeals also rejected Mr. Baker's argument that the record did not contain any evidence that Mr. Baker had constructive possession of money found in a storage unit and rejected Mr. Melvin's argument that cumulative error warranted a new trial and his argument that the trial court erred when it entered a judgment for restitution. *Id.* at *7–9. Finally, the Court of Appeals concluded that the trial court erred in entering a civil judgment for attorneys' fees against Mr. Melvin because the trial court failed to provide Mr. Melvin with an opportunity to be heard. *Id.* at *9. Our decision leaves undisturbed these portions of the Court of Appeals decision.

Walnut Creek Amphitheater in Raleigh, North Carolina, on 13 July 2015. The men were wearing dark clothing, except for one who was wearing a tan coat, and all three men had their faces concealed. The assailants corralled five employees in one or two offices, holding them all at gunpoint and threatening to shoot them. After forcing one of the employees, a supervisor, to call the general manager, the men compelled the general manager to open the safe. Two of the armed men then began packing money into bags while the third moved some of the employees into a walk-in freezer. The men stole approximately $497,000 and then fled the scene. The State alleged that Mr. Melvin was the driver of a car that transported the three men who robbed the amphitheater.

On 8 June 2017, the State filed motions (1) to join for trial the offenses of six counts of robbery with a dangerous weapon, one count of conspiracy to commit robbery with a dangerous weapon, and five counts of second degree kidnapping against each of four defendants (Mr. Melvin, Mr. Baker, Shymale Robertson, and Adjani Bryant); and (2) to join for trial six defendants (Mr. Melvin, Mr. Javeal Baker, Shymale Robertson, Adjani Bryant, Ms. Kianna Baker, and Lorenzo McNeil) on the theory that the offenses charged against each defendant were all part of a common scheme or plan. The motion for joinder of offenses and the motion for joinder of defendants were included in the same document for each defendant, titled "Motion and Order for Joinder." The record contains a subsequent motion by the State, made

28 June 2017, that sought to join all of the same defendants with the exception of Adjani Bryant, who testified against Mr. Melvin and Mr. Baker at trial.

¶ 4        At a hearing to consider the State's motions for joinder, the defendants made various arguments about why they should be tried separately. Counsel for Mr. Robertson argued, in part, that Mr. Robertson's case should be severed because he intended to call a witness named Chicago Smith who would provide information, in the form of a statement from Mr. Melvin, that was potentially exculpatory for Mr. Robertson and potentially incriminating for Mr. Baker and Mr. Melvin. Mr. Robertson's counsel also argued that much of the evidence expected to be presented in the case did not pertain to Mr. Robertson, that he intended to elicit information from one of the State's witnesses that would likely be prejudicial to the other defendants and to Mr. Melvin in particular, that the other defendants (and Mr. Melvin particularly) were more culpable than Mr. Robertson, and that Mr. Robertson might be convicted on the basis of his association with the other defendants rather than on the basis of his guilt.

¶ 5        Mr. Baker's counsel asked for Mr. Baker's trial to be severed from Mr. Robertson's trial because of Mr. Robertson's plan to call Chicago Smith, arguing that if they were tried jointly, he would be unable to cross-examine Mr. Melvin, a co-defendant who was the source of Chicago Smith's information. However, Mr. Baker's counsel suggested that the problem could be solved if Mr. Baker's and Mr. Melvin's

trials were severed from each other. Mr. Baker's counsel also requested severance from Ms. Kianna Baker (Mr. Baker's mother) and Mr. Melvin (Ms. Baker's partner), on the basis that he might be convicted based on the conduct of Ms. Baker and Mr. Melvin. Mr. Baker's counsel argued that the dearth of direct evidence related to his client and the more substantial evidence forecast to be presented against Mr. Melvin and Ms. Kianna Baker made it more likely that he might be convicted as a result of his relationship to Mr. Melvin and Ms. Baker.

¶ 6    Mr. Melvin's counsel argued that Mr. Robertson's trial should be severed because Chicago Smith's testimony, expected to be elicited by Mr. Robertson, was likely to conflict with the State's evidence presented through the testimony of Adjani Bryant. On his own motion to sever, Mr. Melvin's counsel argued that, because the State alleged that Mr. Melvin was the driver rather than one of the three armed men who robbed the amphitheater, Mr. Melvin should be tried separately to avoid confusing the jury.

¶ 7    Ms. Kianna Baker's counsel argued that she should be tried separately because (1) Ms. Baker was charged as an accessory after the fact rather than a principal, and (2) Ms. Baker was likely to be convicted on the basis of her associations rather than on the evidence. Mr. McNeil's counsel did not make any arguments as to joinder in anticipation that Mr. McNeil's case would be resolved before the trial began.

¶ 8    After taking the motions under advisement, the trial court ultimately granted

the State's motion to join the defendants and offenses for trial as to Mr. Baker, Mr. Melvin, Ms. Kianna Baker, and Mr. McNeil. As to Mr. Robertson, the trial court denied the State's motion to join him as a defendant for trial, but granted the State's motion to join his charged offenses. The joint trial of Mr. Melvin, Ms. Kianna Baker, and Mr. Javeal Baker began on 10 July 2017.

¶ 9        During the joint trial, Mr. Melvin moved to sever defendants an additional five times. First, Mr. Melvin asked to be heard following direct examination testimony by Kelly Ann Kinney, a detective with the Raleigh Police Department. Mr. Melvin argued that the detective had testified to statements made by Ms. Baker to Detective Kinney indicating that Mr. Melvin sold marijuana and had purchased two vehicles. Mr. Melvin argued that he had "wanted to sever for these particular reasons" and renewed his motion to sever the defendants, which was denied. Second, Mr. Melvin renewed his objection to joinder of defendants, without further explanation, at the close of the State's evidence. Third, Mr. Melvin renewed his objection to joinder of defendants, again without further argument, at the close of all evidence.

¶ 10        Mr. Melvin's final two objections to joinder of the defendants came after the parties' closing arguments. The first of the two objections, Mr. Melvin's fifth overall objection to the defendants' joinder, came at the end of the jury's first day of deliberations. After the trial court dismissed the jury for the evening, the trial court asked whether there were any additional objections from counsel regarding

instructions that had been provided. Mr. Melvin's counsel stated, "Nothing as to that. I did want to revisit a matter and renew my objection to the joinder of this matter based on [Mr. Baker's counsel's] comments in his closing arguments." The trial court denied the motion. The following day, the jury returned its verdicts. The day after that, before the trial court conducted sentencing, Mr. Melvin's counsel asked to be heard and explained that his objection after the closing argument from Mr. Baker's counsel was because Mr. Melvin "not only had to contest [the State] but had to contest [Mr. Baker]." In the view of Mr. Melvin's counsel, this was in violation of Mr. Melvin's rights under the United States and North Carolina constitutions.

¶ 11     During his closing argument, Mr. Baker's counsel had argued to the jury that Mr. Melvin had committed the actual robbery, stating:

> The Walnut Creek Amphitheater was robbed. Those six victims were robbed. Those six victims were then kidnapped in the sense of being put in a cooler or left in the cash room. The question is who did that? And the defense that we've been trying to present to you through the questions is that it wasn't Javeal Baker, but it was Adjani Bryant, who you know did go into this robbery, and it was Jamell Melvin, and it was Lorenzo [McNeil].

Mr. Baker's counsel then emphasized that "the evidence that [he'd] tried to present" through his questions was that the robbery "was committed by Adjani Bryant, by Jamell Melvin, and by Lorenzo [McNeil]."[2] Mr. Baker's counsel went on to assert that

---

[2] A review of the trial transcript reveals the efforts of Mr. Baker's trial counsel in this regard. For example, Mr. Baker's counsel used cross-examination to elicit information

Mr. Melvin (rather than Mr. Baker) had been in the building committing the robbery, arguing that Mr. Melvin matched the physical description of one of the robbers and that Mr. Melvin was more closely associated with the other suspects in the case.

¶ 12          At the trial's conclusion, Mr. Melvin and Mr. Baker were each convicted of six counts of robbery with a dangerous weapon, five counts of second-degree kidnapping, and one count of conspiracy to commit robbery with a dangerous weapon.[3] The trial court entered judgment, and they both appealed their judgments to the Court of Appeals.

¶ 13          On appeal to the Court of Appeals, Mr. Melvin and Mr. Baker primarily argued that the trial court should have severed their cases and tried them separately. *State v. Melvin*, No. COA18-843, 2019 WL 6134204, at *1 (N.C. Ct. App. Nov. 19, 2019) (unpublished). They asserted that they had put on antagonistic defenses at trial. *Id.* at *2. The Court of Appeals did not address the merits of this argument, holding instead that it was unpreserved because neither Mr. Melvin nor Mr. Baker had argued before trial that they planned to present antagonistic defenses. *Id.* at *2–5.

_____

regarding a violent assault by Mr. Melvin; ties between Mr. Melvin and Adjani Bryant (who admitted involvement in the robbery); and Mr. Melvin's history of working at the amphitheater, contrasting the lack of a similar history on Mr. Baker's part. It was also Mr. Baker's counsel who elicited testimony regarding Mr. Melvin's height, which he later argued was evidence that Mr. Melvin and not Mr. Baker had entered the amphitheater to commit the robbery. While these examples are not every instance of Mr. Baker's counsel referring to Mr. Melvin, they indicate that the alleged conflict did not first appear during closing arguments.

[3] Ms. Kianna Baker, who was not a party to the appeal below, was convicted of accessory after the fact of robbery with a dangerous weapon.

After rejecting most of the defendants' other arguments as being without merit, the Court of Appeals found no error in the judgments of conviction but vacated and remanded the civil judgment of attorneys' fees against Mr. Melvin. *Id.* at \*9. Mr. Melvin sought discretionary review in this Court, asking that we review that portion of the Court of Appeals decision which addressed his objection to the joinder of his trial with that of Mr. Baker. We allowed the petition on 26 February 2020.

## II.    **Standard of Review**

¶ 14    "This Court reviews the decision of the Court of Appeals to determine whether it contains any errors of law." *State v. Golder*, 374 N.C. 238, 244 (2020) (quoting *State v. Melton*, 371 N.C. 750, 756 (2018)). As to the trial court's grant of the State's motion for joinder, consolidating the trials of defendants alleged to be responsible for the same behavior is preferred as a matter of public policy. *State v. Tirado*, 358 N.C. 551, 564 (2004) (citing *State v. Nelson*, 298 N.C. 573, 586 (1979)). Therefore, "[a] trial court's ruling on a motion for joinder is reviewed for abuse of discretion in light of the circumstances of the case, and the ruling will not be disturbed on appeal absent a showing that the joinder caused the defendant to be deprived of a fair trial." *Id.* (citing *State v. Golphin*, 352 N.C. 364, 399 (2000)); *see also State v. Slade*, 291 N.C. 275, 281–82 (1976). We will reverse a trial court for abuse of discretion "only upon a showing that its actions are manifestly unsupported by reason" or where the ruling "was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*,

312 N.C. 770, 777 (1985). However, such an abuse of discretion is established when the trial court makes an error of law. *Da Silva v. WakeMed*, 375 N.C. 1, 5 n.2 (2020) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)); *State v. Rhodes*, 366 N.C. 532, 536 (2013); *accord Lamm v. Lorbacher*, 235 N.C. 728, 732 (1952) (stating that "a matter resting in the sound discretion of the trial court . . . is not reviewable on appeal" absent "a palpable abuse of such discretion" or "some imputed error of law or legal inference" (first quoting *Johnston v. Johnston*, 213 N.C. 255, 257 (1938); then quoting *Hughes v. Oliver*, 228 N.C. 680, 685 (1948); then quoting *Johnston*, 213 N.C. at 257)).

## III.    Severance of Defendants for Trial

The Court of Appeals erred by considering only the pretrial motions for severance. Instead, it should have considered each of the motions made by Mr. Melvin's counsel and decided on the merits whether the trial court was required to sever the defendants' trials.

Section 15A-927 of the General Statutes governs objections to the joinder of defendants for trial. The statute provides that a trial court "must deny a joinder for trial or grant a severance of defendants whenever" (1) the trial court finds before trial that severance is necessary to protect a defendant's speedy trial right or to promote a fair determination of guilt or innocence, or (2) the trial court finds during trial that severance is "necessary to achieve a fair determination" of guilt or innocence.

N.C.G.S. § 15A-927(c)(2) (2019). If during trial, the motion to sever must be made by the severing defendant or by the prosecutor with the severing defendant's consent. N.C.G.S. § 15A-927(c)(2)(b). Thus, the statute contemplates that defendants may object to joinder or move for severance both "before trial" and "during trial." N.C.G.S. § 15A-927(c)(2). Further, the statute does not limit such objections or motions to the period of time before trial or before the close of the State's evidence. *See id.* Instead, the trial court "must deny a joinder for trial or grant a severance of defendants whenever . . . it is found necessary to achieve a fair determination of the guilt or innocence of [the severing] defendant." *Id.* Defendants may preserve for appellate review, then, a claim for severance of defendants by objecting to joinder or moving for severance of defendants at any point during the trial. *See, e.g.*, *State v. Evans*, 346 N.C. 221, 231–32 (1997) (considering the merits of a defendant's argument that the trial court erred by denying his motion to sever the defendant's case for trial based in part on evidence presented during a co-defendant's case-in-chief); *State v. Workman*, 344 N.C. 482, 492–96 (1996) (considering the merits of a defendant's argument that the trial court erred by denying his motion to sever the defendant's case for trial based only on occurrences after the State rested its case-in-chief). There is no part of the statute which would support a conclusion to the contrary.

¶ 17     The Court of Appeals concluded that Mr. Melvin's argument for severance was not preserved and stated that "[t]o preserve an argument concerning joinder or

severance for appellate review, the defendant must assert that specific argument to the trial court before trial or, if the ground for severance arises only after the trial begins, immediately after that ground becomes apparent." *Melvin*, 2019 WL 6134204, at *2 (citing *State v. Walters*, 357 N.C. 68, 79 (2003)). This is true as to severance of offenses. *See* N.C.G.S. § 15A-927(a)(1) ("A defendant's motion for severance of offenses must be made before trial as provided in G.S. 15A-952, except as provided in G.S. 15A-953, and except that a motion for severance may be made before or at the close of the State's evidence if based upon a ground not previously known."); *accord Walters*, 357 N.C. at 79 ("Pursuant to N.C.G.S. § 15A-927(a), a defendant must make a motion for severance of offenses before trial unless the basis for the motion is a ground not previously known. Under such a situation, the defendant may move for severance during trial but no later than the close of the State's evidence."). However, the statute contains no similar requirement for the timing of a motion for severance of defendants. *See generally* N.C.G.S. § 15A-927.

¶ 18    Indeed, this Court has previously addressed the merits of an argument for severance of defendants against a similar procedural backdrop. In *State v. Pickens*, 335 N.C. 717 (1994), the two co-defendants "filed motions to sever prior to trial" which were denied. *Id.* at 724. Both defendants renewed their motions throughout the trial and were denied. *Id.* In that decision, we gave no indication that we were limiting our analysis to the arguments made prior to trial. Instead, we considered the "numerous

evidentiary rulings" identified by the co-defendants "which they contend[ed] resulted in the denial of a fair trial for each of them." *Id.*; *see also Nelson*, 298 N.C. at 586–87 (considering testimony of co-defendants, which necessarily occurred after the close of the State's evidence, to determine whether motions of severance of defendants were properly denied). In the decision below, the Court of Appeals relied on two of our prior decisions to conclude that the arguments of Mr. Melvin and Mr. Baker were unpreserved. *See Melvin*, 2019 WL 6134204, at *2 (citing *Walters*, 357 N.C. at 79); *Id.* at *4 (citing *State v. Silva*, 304 N.C. 122, 127 (1981)). However, both of those decisions pertained to severance of offenses rather than severance of defendants. *See Walters*, 357 N.C. at 79 (considering preservation of the defendant's argument that the trial court erred by consolidating "the murders and related charges regarding" multiple victims); *Silva*, 304 N.C. at 126 (considering preservation of the defendant's argument that the trial court erred by consolidating charges of robbery, larceny, and conspiracy).

¶ 19          On these facts, where Mr. Melvin objected to joinder prior to trial, moved to sever during trial when he perceived that testimony relating a co-defendant's statements prejudiced him, renewed the motion to sever at the close of the State's evidence and at the close of all evidence, and again moved to sever on the basis of a co-defendant arguing during closing that Mr. Melvin was guilty, we hold that Mr. Melvin sufficiently preserved for appellate review his motion to sever his trial from

that of his co-defendants on the basis of antagonistic defenses. The Court of Appeals erred by applying the preservation standard for severance of offenses rather than the standard applicable to severance of defendants and erroneously limited its consideration to only Mr. Melvin's pretrial arguments for severance. As a result, we reverse the Court of Appeals decision holding that Mr. Melvin did not adequately preserve his argument and remand to that court for consideration of Mr. Melvin's claim on the merits.

REVERSED AND REMANDED.

Justice BERGER concurring in result only.

I agree with the majority that the Court of Appeals applied the wrong statute when it analyzed this case. Rather than applying N.C.G.S. § 15A-927(c)–severance of defendants–the Court of Appeals applied N.C.G.S. § 15A-927(a)(1)–(2)–severance of offenses. However, I concur in result only because this case should simply be remanded for the Court of Appeals to apply N.C.G.S. § 15A-927(c) and to analyze preservation under the appropriate statute, rather than this Court making the determination in the first instance.

Instead, the majority has issued an opinion concerning preservation which could be misinterpreted as removing Rule 10's requirement for specific grounds in cases involving joinder or severance of defendants. Given the plain language of Rule 10, the majority could not have intended for an objection to joinder on *Bruton* grounds to preserve an antagonistic defenses argument on appeal. It is more likely that the majority intended to convey that defendant's objection prior to sentencing preserved for appellate review his antagonistic defenses argument.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a). Defendant's sole motion to sever based on antagonistic defenses was his sixth objection to joinder, made after the jury verdict and prior to sentencing. A misreading of the majority opinion could

allow defendants to argue one ground for severance at trial but still preserve wholly unrelated arguments for appeal. This would undermine the purpose of requiring a party to state the specific grounds for a motion or an objection and obtain a ruling from the trial court.

N.C.G.S. § 15A-927(c) sets forth specific grounds for severance of defendants: when (1) "a defendant objects to joinder of charges against two or more defendants for trial because of an out-of-court statement of a codefendant makes reference to him but is not admissible against him," (2) "if before trial it is found necessary to protect a defendant's right to a speedy trial," or (3) either before or during trial, it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants. *See* N.C.G.S. § 15A-927(c)(1)–(3) (2019). The issue of antagonistic defenses is one of several circumstances in which severance may be related to promoting a fair determination of guilt or innocence, pursuant to N.C.G.S. § 15A-927(c)(2). *See State v. Pickens*, 335 N.C. 717, 725, 440 S.E.2d 552, 556 (1994) ("The test [for antagonistic defenses] is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." (cleaned up)).

Here, defendant only raised the specific ground of antagonistic defenses in his sixth objection to joinder. Defendant's other objections either concerned *Bruton* issues or were simply renewals of prior objections. As such, defendant's five earlier

objections did not preserve the issue of antagonistic defenses for appellate review. *See State v. Ward*, 301 N.C. 469, 477, 272 S.E.2d 84, 89 (1980) ("A specific objection, if overruled, will be effective only to the extent of the grounds specified.").

During the pre-trial hearing, defendant first objected to joinder, arguing that there was a *Bruton* issue with potential witness Chicago Smith. During trial, defendant renewed his motion to sever based on *Bruton* because of a statement that defendant was a drug dealer. Counsel for defendant stated that he was renewing his motion to sever "for these particular reasons." Defendant's next two objections, made at the close of the State's evidence and the close of all of the evidence, were renewals of his prior objections. None of these objections mentioned antagonistic defenses, and there was no argument made by defendant related to antagonistic defenses.

After closing arguments, defendant's counsel again attempted to sever; this time based on comments counsel for co-defendant Baker made during closing arguments. However, defense counsel stated that he was "renew[ing his] objection to the joinder of this matter." Defendant failed to direct the court to the specific comments made by Baker's counsel during closing arguments to which he was objecting, and he never objected based on antagonistic defenses.

Following the entry of the jury's verdicts, defense counsel finally articulated an objection related to antagonistic defenses. Defense counsel stated:

> during the course of the trial, I renewed my objection to the court joining these defendants for trial. I just want to make

sure that it's on the record as to why. As you recall, Mr.
Wilkinson gave a closing, and my client, Mr. Melvin, not
only had to contest Mr. Waller but had to contest Mr.
Wilkinson, and I think that's a violation of his
constitutional rights, both under North Carolina and the
U.S. Constitution. So I want to put that on the record.

This was the only time defendant argued for severance based on the possibility of antagonistic defenses and a fair determination of guilt or innocence.

The majority holds that:

where [defendant] objected to joinder prior to trial, moved
to sever during trial when he perceived that testimony
relating a co-defendant's statements prejudiced him,
renewed the motion to sever at the close of the State's
evidence and at the close of all evidence, and again moved
to sever on the basis of a co-defendant arguing during
closing that [defendant] was guilty, we hold that
[defendant] sufficiently preserved for appellate review his
motion to sever his trial from that of his co-defendants on
the basis of antagonistic defenses.

This could be read as holding that defendant's sixth objection preserved his antagonistic defense argument. Or, the majority opinion could be viewed, contrary to Rule 10, as permitting a defendant to object to joinder on one ground, but nevertheless preserve a different issue for our review.[1] The majority's approach, however, overlooks the fact that defendant abandoned many of his joinder arguments. *See* N.C. Rule App. P. 28(a) ("Issues not presented and discussed in a party's brief are

---

[1] Such a procedure would be equivalent to allowing an argument that a particular statement is not a present sense impression under Rule 803(1) of the North Carolina Rules of Evidence to then preserve for appellate review every potential hearsay objection that could have been made by a party.

deemed abandoned.").  It seems incongruent to find preservation where a party has abandoned the issue on appeal.

¶ 30          While I agree with the majority that the Court of Appeals opinion was premised on the wrong statute, this matter should be remanded for the Court of Appeals to apply N.C.G.S. § 15A-927(c) and review preservation of defendant's antagonistic defenses argument under that section.

Chief Justice NEWBY and Justice BARRINGER join in this concurring opinion.